UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re                                                                    Chapter 13

Jean S. Jean-Francois,                                       Case No. 13-44946-CEC

                Debtor.
-----------------------------------------------------------------X

# DECISION

Appearances:

| | |
|---|---|
| Sean A. O'Neal, Esq. | Bruce D. Mael, Esq. |
| Humayun Khalid, Esq. | Berkman Henoch Peterson Peddy & Fenchel |
| Cleary Gottlieb Steen & Hamilton LLP | P.C. |
| One Liberty Plaza | 100 Garden City Plaza |
| New York, New York 10006 | Garden City, New York 11530 |
| *Attorneys for the Debtor* | *Attorneys for Church Avenue Partners, LLC* |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of Jean S. Jean-Francois (the "Debtor") for sanctions against Church Avenue Partners LLC ("Church Avenue") pursuant to § 362(k)[1] for willful violation of the automatic stay. Church Avenue opposed the Debtor's motion, and the Court held a trial on April 27, 2015 on the issue of whether Church Avenue violated the automatic stay by evicting the Debtor after he filed for bankruptcy, whether the violation was willful, and whether the Debtor is entitled to actual or punitive damages. For the following reasons, the Court finds that Church Avenue violated the automatic stay, and awards the Debtor $50,000 in punitive damages.

## JURISDICTION

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This is a core proceeding under § 157 of the Judicial Code. 28 U.S.C. § 157; see Calderon v. Bank of America Corp. (In re Calderon), 497 B.R. 558, 564 (Bankr. E.D. Ark. 2013) ("A proceeding under section 362(k) is a proceeding arising under title 11 and is a core proceeding under § 157 of the Judicial Code.") (quotations and alterations omitted). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

The following facts are undisputed unless otherwise indicated. The Debtor is a pastor of Eglise de Dieu church (the "Church") (Trial Tr. 18:10-15, 101:13-14, April 27, 2015, ECF No.

---

[1] Unless otherwise indicated, "Section" or "§" refers to a section under title 11 of the United States Code (the "Bankruptcy Code").

130.)[2]  In February, 2007, the Debtor purchased a three-story building at 3502 Church Avenue, in Brooklyn, New York, which includes a basement, a commercial space on the first floor, and seven residential apartments on the second and third floors (the "Building").  (Pre-Trial Order 2, ECF No. 129.)  To finance the purchase, the Debtor borrowed $562,500 from Flushing Savings Bank, which took a mortgage on the Building.  (Pre-Trial Order 2, ECF No. 129.)  The Debtor used the first floor and basement of the Building to conduct religious worship services for the Church.  (Pre-Trial Order 2, ECF No. 129.)  The Debtor fell behind in his mortgage payments, and in December 2008, Flushing Savings Bank brought a foreclosure action against him.  (Pre-Trial Order 2, ECF No. 129.)

Church Avenue subsequently purchased the loan from Flushing Savings Bank and was substituted as plaintiff in the ongoing foreclosure action.  In re Jean-Francois, 516 B.R. 699, 701 (E.D.N.Y. 2014).  In February 2012, the Kings County Supreme Court entered a Judgment of Foreclosure and Sale with respect to the Building, which was amended in May 2013.  (Pre-Trial Order 2, ECF No. 129.)  A foreclosure sale of the Building was scheduled for August 15, 2013 at 3:00 p.m.  (Pre-Trial Order 2, ECF No. 129.)  On August 13, 2013, two days prior to the scheduled foreclosure sale, the Debtor attempted to file for relief under Chapter 13 of the Bankruptcy Code, but the filing consisted only of the certificate of credit counseling pursuant to § 109(h), and did not include a bankruptcy petition.  (Pre-Trial Order 3, ECF No. 129; Notice to Cure Defective Internet Filing, ECF No. 3.)  On August 15, 2013, at 2:09 p.m., the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.  (Petition, ECF No. 4.)

On August 15, 2013, at approximately 2:30 p.m., the Building was sold at the foreclosure sale.  (Pre-Trial Order 3, ECF No. 129.)  On August 30, 2013, the successful bidder's counsel

---

[2] Unless otherwise indicated, citations to "ECF No." are to papers filed on the docket of Case Number 13-44946.

sent Church Avenue's counsel an email noting that the Debtor had filed for bankruptcy. (Pre-Trial Order 3, ECF No. 129.) On September 3, 2013, Church Avenue's counsel acknowledged that the Debtor had filed for bankruptcy in an email that he sent to the successful bidder's counsel. (Pre-Trial Order 3, ECF No. 129.) On September 4, 2013, the city marshal issued a notice of eviction to the Debtor with respect to the Building. (Pre-Trial Order 3, ECF No. 129.)

On September 16, 2013, Church Avenue executed the warrant of eviction, and in the course of this action, there was a physical altercation between the Debtor's wife, Ms. Jean-Francois, and agents or members of Church Avenue at the Building. (Pre-Trial Order 3, ECF No. 129.)[3] The parties disagree about the details of this altercation and who initiated it. The Debtor contends that Eli Davidovics, a member of Church Avenue, and a city marshal entered the Building to evict the Debtor and change the locks. (Pre-Trial Order 4, ECF No. 129.) The Debtor further contends that personal property belonging to him — consisting of furniture, musical instruments, audio-visual equipment, and religious accessories and decorations used in religious services — was removed from the first floor commercial space and the basement during the eviction and never returned. (Pre-Trial Order 4, ECF No. 129.) According to the Debtor, while the movers were removing the personal property, Ms. Jean-Francois showed them documentation from the state court indicating that she was entitled to access to the Building, and

---

[3] There is some confusion in the record about the date of the eviction and altercation. According to the parties' statement of undisputed facts in the Pre-Trial Order, as well as Ms. Jean-Francois's testimony, the altercation occurred on September 16; however, Mr. Davidovics stated in his direct affidavit testimony that it took place on September 12. Further, the Debtor provided two police reports in connection with the trial: one Incident Information Slip filled out on September 24, 2013, which lists the date of the altercation as September 12, and another Verification of Crime report filled out on December 17, 2014, which lists the date of the altercation as September 14, 2014. (The Court will assume that the date of the incident listed on the Verification of Crime report is a mistake, at least to the extent it shows the year as 2014.) In any event, for the purposes of deciding whether Church Avenue willfully violated the automatic stay, whether the eviction occurred on the September 12 or September 16 is irrelevant, because both dates are after Church Avenue learned of the bankruptcy filing. Therefore the Court will hold the parties to their statement of undisputed facts in the Pre-Trial Order, and assume that the eviction happened on September 16, 2013.

in response the movers and Mr. Davidovics physically assaulted Ms. Jean-Francois. (Pre-Trial Order 4, ECF No. 129.) According to the Debtor, following the altercation, Ms. Jean-Francois sought medical care and filed a report with the New York Police Department. (Pre-Trial Order 4, ECF No. 129.) Church Avenue disputes the Debtor's version of events, contending the personal property that had been removed from the Building was put back, and that any physical altercation that occurred was started by Ms. Jean-Francois. (Pre-Trial Order 5, ECF No. 129.)

The parties agree that Ms. Jean-Francois returned to the Building on September 18, 2013 to retrieve personal property pursuant to an order issued by the Civil Court of the City of New York. (Pre-Trial Order 3, ECF No. 129.) Mr. Davidovics was present at the time and let Ms. Jean-Francois into the Premises. (Pre-Trial Order 4, ECF No. 129.) The Debtor contends that upon entering the Building, Ms. Jean-Francois observed that all of the personal property that had been in the Building was gone, except for approximately 15 to 20 chairs. (Pre-Trial Order 4, ECF No. 129.) Church Avenue contends that any personal property that was removed from the Building was returned and that the personal property did not belong to the Debtor in any event, but to the Church. (Pre-Trial Order 4-5, ECF No. 129.)

On September 24, 2013, Church Avenue moved to modify and annul the automatic stay to retroactively validate the foreclosure auction (the "Lift Stay Motion"), and on October 8, 2013 the Debtor filed a motion for damages against Church Avenue for violation of the automatic stay (the "Sanctions Motion"). On November 25, 2013, the Court granted the Lift Stay Motion in part, and entered an order annulling the automatic stay as to Church Avenue's actions in connection with the foreclosure sale of the Building on August 15, 2013. (Order Annulling the Automatic Stay, ECF No. 43.) The Order Annulling the Automatic Stay did not lift the stay with respect to any action taken by Church Avenue to evict the Debtor, and Church Avenue never

sought stay relief to evict the Debtor. The Debtor appealed the Order Annulling the Automatic Stay to the District Court, and the District Court affirmed the Order Annulling the Automatic Stay. Jean-Francois, 516 B.R. 699. On April 24, 2014, the Court dismissed the Debtor's bankruptcy case and reserved jurisdiction to rule on the Sanctions Motion. (Dismissal Order, ECF No. 87.) On April 27, 2015, the Court held a trial on the Sanctions Motion.

## **LEGAL STANDARD**

Under § 362(a), the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor [and] (2) the enforcement, against the debtor . . . , of a judgment obtained before the commencement of the [bankruptcy case.]" 11 U.S.C. § 362(a). "Clearly an eviction proceeding is a judicial proceeding against the Debtor within § 362(a)(1), and the issuance of the state court warrant of eviction is the enforcement of a judgment against the Debtor obtained before the commencement of the bankruptcy case within the meaning of § 362(a)(2)." In re Butler, 14 B.R. 532, 534-35 (S.D.N.Y. 1981).

Under § 362(k), "an individual injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). As the Second Circuit has recognized, "any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages." In re Crysen/Montenay Energy Co., 902 F.2d 1098, 1105 (2d Cir. 1990); see also In re Ebadi, 448 B.R. 308, 320 (Bankr. E.D.N.Y. 2011) ("A deliberate action that violates the automatic stay, taken while the violator knew that the stay was in effect, justifies an award of actual damages, with no further showing necessary."). "A 'specific intent to violate the stay is not required; instead, general intent in taking actions which

have the effect of violating the automatic stay is sufficient to warrant damages.'" In re Ampal-Am. Israel Corp., 502 B.R. 361, 373 (Bankr. S.D.N.Y. 2013) (quoting In re Sturman, No. 10 CIV. 6725, 2011 WL 4472412, at *2 (S.D.N.Y. Sept. 27, 2011)).  "The party moving for damages [under § 362(k)] bears the burden of proof."  In re Salov, 510 B.R. 720, 733 (Bankr. S.D.N.Y. 2014).

"An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to [§ 362(k)]."  Crysen/Montenay Energy Co., 902 F.2d at 1105; see also Ebadi, 448 B.R. at 320 ("Punitive damages . . . are only appropriate where the stay violation was conducted in bad faith, with malice, or in a particularly egregious manner.").

## DISCUSSION

The Debtor argues that because Church Avenue failed to obtain relief from the automatic stay before evicting him, it violated the automatic stay.  The Debtor further maintains that, other than Ms. Jean-Francois's visit to the Building on September 18, 2013, during which she was accompanied by Mr. Davidovics, neither the Debtor nor Ms. Jean-Francois were able to obtain access to the Building after September 16, 2013, because Church Avenue changed the locks, and that this ongoing denial of access amounted to a continuing violation of the automatic stay.  As a result of Church Avenue's stay violation, the Debtor argues that he is entitled to damages as provided in § 362(k).

In response, Church Avenue argues that it did not violate the automatic stay by evicting the Debtor from the Building because the Building was not property of the estate and therefore not subject to the protection of the automatic stay.  (Opposition to Motion for Sanctions 5-6, ECF No. 29.)  Church Avenue also argues that it believed that it was evicting the Church, not the

6

Debtor, and therefore its stay violation was not willful. (Trial Tr. 42:11-16, ECF No. 130.) Further, Church Avenue argues that even if it did violate the automatic stay by evicting the Debtor, Church Avenue rectified any stay violation by returning to the Building all of the personal property removed from the Building at the time of the eviction. (Trial Tr. 42:17-25, ECF No. 130.)

This motion presents three issues: first, whether Church Avenue violated the automatic stay by evicting the Debtor, and, if so, whether the violation was willful; second, whether the Debtor met his burden to show that he is entitled to actual damages for the lost personal property; and third, whether the Debtor is entitled to punitive damages. Each issue will be addressed in turn.

## I.     Church Avenue Willfully Violated the Automatic Stay by Evicting the Debtor

When the Debtor filed his bankruptcy petition on August 15, 2013, under § 362(a)(1), all entities were stayed from commencing or continuing a judicial proceeding against the Debtor, including an eviction proceeding. See Butler, 14 B.R. at 534-35. Here, the Debtor filed a bankruptcy petition on August 15, 2013 and notwithstanding the automatic stay, Church Avenue evicted the Debtor from the Building on September 16, 2013, at least 13 days after Church Avenue learned of the bankruptcy filing. This was a willful violation of the automatic stay.

Church Avenue's argument that it did not violate the automatic stay because the Building was not property of the estate must be rejected. Church Avenue asserts that the Debtor transferred ownership of the Building to Sheza J. Alizai before filing for bankruptcy. (Pre-Trial Order 4, ECF No. 129.) However, because the Debtor's "mere possessory interest" in the Building was sufficient to trigger the protection of the automatic stay, whether the Debtor owned the Building at the time of the eviction is not relevant. In re 48th St. Steakhouse, Inc., 835 F.2d 427, 430 (2d Cir. 1987); see Salov, 510 B.R. at 729 (holding that creditors violated the automatic

stay by filing a post-petition motion for a writ of eviction against a debtor in state court and serving her with notice of that action, because the debtor's possessory interest in property, even absent any legal interest, is protected by the automatic stay). Here, Church Avenue violated the automatic stay because it pursued an eviction proceeding against the Debtor, who was a defendant in the foreclosure action and named in the notice of eviction, after he had filed for bankruptcy. Although Church Avenue argues that it was pursuing the eviction proceeding against property that was not part of the bankruptcy estate, this argument misses the point: whether or not the Building was property of the estate, the Debtor was still protected from eviction by the automatic stay.

Church Avenue also argues that it believed that it was evicting the Church, and not the Debtor, and therefore its stay violation was not willful. In substance, Church Avenue argues that any alleged stay violation was inadvertent because it did not know that the Debtor was actually occupying the Building and the only reason that the Debtor was named in the foreclosure action and in the notice of eviction was that he was a prior owner of the Building. This argument must be rejected. Mr. Davidovics testified that he named a number of parties in the foreclosure action, and that he included the Debtor as one of the defendants "because he had the connection to the buildings, and [Church Avenue] wanted to cover [its] bases." (Trial Tr. 101:17-22, ECF No. 130.) However, the foreclosure action had already been concluded by the time of the eviction. The fact that the Debtor was named as the only tenant on the notice of eviction directly contradicts Church Avenue's assertion that it did not know that the Debtor was an occupant of the Building, and calls into doubt the credibility of Mr. Davidovics's testimony. The fact that Church Avenue obtained a notice of eviction of the Debtor before carrying out the eviction supports the conclusion that Church Avenue knew that the Debtor had a possessory interest in

the Building. See In re Burg, 295 B.R. 698, 701 (Bankr. W.D.N.Y. 2003) ("That the . . . creditors have need to obtain an order of eviction is itself an acknowledgment of [the debtor's] possession of the property.").

Church Avenue next argues that, although the eviction may have been a violation of the stay, the violation was rectified by returning all of the personal property that was removed from the Building during the eviction. (Trial Tr. 47:6-25, ECF No. 130.) However, even if Church Avenue returned the personal property to the Building after the eviction this does not alter the fact that Church Avenue evicted the Debtor in violation of the automatic stay.

The Debtor argues, though it is disputed, that Church Avenue continued to violate the automatic stay after September 16 by failing to restore the Debtor to possession of the Building after the eviction. Ms. Jean-Francois testified that on September 16, she witnessed Mr. Davidovics and a city marshal change the locks to the Building. (Jean-Francois Aff. 3, ECF No. 126.) Mr. Davidovics, however, testified that he neither changed the locks to the Church premises nor directed anyone to do so. (Davidovics Aff. 3, ECF No. 128.) On cross-examination at trial, Mr. Davidovics testified that although his primary objective as a member of Church Avenue was to preserve the Building, the Debtor and Ms. Jean-Francois retained keys to the front door of the Building and could enter the Building at any time after September 16, 2013. (Trial Tr. 113:10-114:13, ECF No. 130.) For this reason, Church Avenue argues, there was no continuing violation of the automatic stay. However, Mr. Davidovics's testimony that he never excluded the Debtor by changing the locks to the Building is patently incredible, particularly in light of his testimony on cross-examination that he did not trust the Debtor and his wife to be around the Building. Mr. Davidovics testified as follows:

> Counsel: And so — and you understood that Mr. and Mrs. Jean- Francois had keys to the front door of the church space?

9

> Mr. Davidovics: Yes.
>
> Counsel: So they could walk in any time they wanted?
>
> Mr. Davidovics: Yes.
>
> Counsel: And you never tried to change that?
>
> Mr. Davidovics: No.
>
> Counsel: Did you trust Mrs. Jean-Francois to be on her own in the building?
>
> Mr. Davidovics: I didn't trust her in general; I mean —
>
> Counsel: But you trusted her to be around the building?
>
> Mr. Davidovics: No, I didn't trust her at all.

(Trial Tr. 114:7-18, ECF No. 130.) It is simply implausible that a commercial investor in real estate, such as Church Avenue, would go to the trouble of foreclosing on real property and evicting the former owner and then fail to change the locks on the Building, particularly when the former owner resisted eviction. In addition to violating the automatic stay on September 16, 2013 by evicting the Debtor from the Building, Church Avenue engaged in a further continuing violation of the automatic stay by denying the Debtor access to the Building thereafter.

**II.    Actual Damages**

Church Avenue's actions caused the Debtor to be evicted from the Building and deprived the Debtor of his possessory interest in the Building. Therefore, the Debtor was actually damaged by Church Avenue's willful violation of the automatic stay. However, an award of actual damages must be based upon evidence sufficient to establish, by a preponderance of the evidence, the amount of such damages, and the Debtor has not met his burden to support an award of actual damages.

The Debtor claims damages as a result of the removal of his personal property, including furniture, musical instruments, audio-visual equipment, and religious accessories and decorations, from the Building, which, the Debtor asserts, were never returned to him. Ms. Jean-Francois, in her direct affidavit testimony, identified 27 such items that were worth, in her

estimation, $104,937.18. (Jean-Francois Aff. 4-7, ECF No. 126.) In his direct affidavit testimony, Mr. Davidovics acknowledged that certain property was in the building before the eviction, including "some chairs, used sound equipment, drums, an electric keyboard, and a lectern." (Davidovics Aff. 3, ECF No. 128.) Church Avenue contends that any personal property that was in the Building at the time of the eviction did not belong to the Debtor, but to the Church.

The Debtor has not met his burden to show that the personal property in question belonged to him. The Debtor did not list any of this property in his petition; his most recent Schedule B, filed in March 2014, lists a stereo, a television, a computer, clothing, jewelry, some cash, a personal checking account, and a car — none of the items that the Debtor claims were lost as a result of the eviction. (Petition, ECF No. 4; Amended Schedule B, ECF No. 74.)[4] If the Debtor owned this personal property he should have included it in his initial Schedule B or the Amended Schedule B that he subsequently filed.

Furthermore, on this record, it is unclear, not only who owned the personal property in the Building but precisely what it consisted of, and what it was worth. It does appear that some property was lost as a result of the eviction, although it is unclear whether the property was removed before September 18, 2013, the last time Ms. Jean-Francois was given access to the Building, or later. However, the only evidence presented by the Debtor to establish the value of the lost property was his wife's unsubstantiated testimony of her recollection of what was in the

---

[4] Note that the Debtor has filed four Schedule B's throughout the pendency of this case. The Debtor did not list any of the items that the Debtor claims were lost in his first, third and fourth Schedule B's. (ECF Nos. 4, 38, and 74.) In his second Schedule B, the Debtor lists $5,000 in religious books and $15,000 worth of church supplies. (First Amended Schedule B, ECF No. 24.) However, the First Amended Schedule B does not support the conclusion that the Debtor owned the religious books and church supplies or any other items in the Building because the Debtor subsequently amended Schedule B to remove these items.

Building on September 16, 2013, and of the prices paid when the property was purchased in 2007. (Jean-Francois Aff. 4, ECF No. 126; Trial Tr. 94:11-95:9, ECF No. 130.) The Debtor has not met his burden to show by a preponderance of the evidence the value of the lost property. For these reasons, the Debtor has not met his burden to show that he is entitled to an award of actual damages.

### III.     Punitive Damages

The Debtor is entitled to punitive damages to the extent that Church Avenue's stay violations were conducted in bad faith, with malice, or in a particularly egregious manner.[5] See Ebadi, 448 B.R. at 320. The Court finds, based upon the testimony adduced at trial, that Ms. Jean-Francois was in an altercation with agents of Church Avenue during the eviction and that she was beaten by one or more of them during the altercation. This finding, that Church Avenue's eviction involved physical violence directed at the Debtor's wife, supports the conclusion that Church Avenue acted in bad faith and in an egregious manner in connection with the stay violation.

In disputing Ms. Jean-Francois's account of the altercation, Church Avenue points to the inconsistency between her testimony as to the date of the eviction and altercation, and the dates shown on the notice of eviction and the New York City Police Department incident information slip. The notice of eviction states that an eviction was scheduled for September 12, the incident

---

[5] It has been held that "a debtor must show that he suffered actual damages in order to recover punitive damages . . . ." In re Prusan, 495 B.R. 203, 207 (Bankr. E.D.N.Y. 2010). Here, the Debtor was actually damaged because he was evicted from the Building on September 16, 2013 and deprived of his possessory interest in the Building continuously thereafter. Moreover, Church Avenue's stay violation was no technical or transient infraction, and was conducted in an egregious manner, involving a physical assault upon the Debtor's wife. Cf. Prusan, 495 B.R. 203 (Holding that creditors were not liable for punitive damages for sending a letter to the state court requesting a contempt hearing following the commencement of the defendant's bankruptcy case, where they took corrective action promptly after sending the letter to inform the state court of the automatic stay and the debtor did not incur any costs in defending himself in the state court.).

information slip states that the assault took place on September 12, and Mr. Davidovics testified that the altercation took place on September 12. But Ms. Jean-Francois testified that the eviction and altercation took place on September 16, and the parties stipulated to that fact in the Pre-Trial Order. Whether the eviction, and the altercation in which Ms. Jean-Francois was beaten, took place on the twelfth or the sixteenth is not relevant here, and any discrepancy in the dates shown on the notice of eviction and police report does not affect the credibility of her account of events.

The Debtor introduced in evidence a discharge report from a Brooklyn hospital on September 16 stating that Ms. Jean-Francois was treated on that date and that her diagnosis included neck pain, physical assault, and neck spasm. This discharge report corroborates Ms. Jean-Francois's testimony that she was physically assaulted. Church Avenue argues that the eviction actually occurred on September 12, and that because Ms. Jean-Francois visited the hospital four days later, her testimony that she was injured as a result of the assault lacks credibility. This argument is contradicted by Church Avenue's stipulation, in the Pre-Trial Order, that the eviction occurred on September 16. Moreover, even if Ms. Jean-Francois sought treatment four days after the assault, this does not undermine the credibility of her account of the attack, which was clear and convincing. In her direct testimony, by affidavit, she testified as follows about the eviction: "I saw Eli Davidovics and four men moving the items located in the first floor space of [the Building] onto a large moving truck. . . . As I was trying to speak to Eli Davidovics, he pushed me and three of the movers struck me with chairs." (Jean-Francois Aff. 3, ECF No. 126.) On cross-examination, she stated as follows:

> I was coming back from the court with papers that [Mr. Davidovics] had to open the doors [to the Building] so I could get my stuff. So [Mr. Davidovics] pushed me and asked me did I pay any mortgage, and [I didn't] even come back, because I had to go to the hospital afterwards.

13

(Trial Tr. 61:25-62:3, ECF No. 130.)  She further testified, "I got hit with the chairs.  Not [Mr. Davidovics], he pushed me; it was the people that were moving for him, and he let them beat me with the . . . chairs."  (Trial Tr. 90:2-4, ECF No. 130.)  The Court finds that in her direct testimony by affidavit, and on cross-examination, Ms. Jean-Francois provided a credible account of the altercation and of the physical assault by Church Avenue's agents.

Church Avenue also argues that Ms. Jean-Francois's direct affidavit testimony is contradicted by the original motion, in which she stated that she was bitten, not beaten.  However, this discrepancy can be explained by the fact that Ms. Jean-Francois is not a fluent English speaker; she testified at trial through a Haitian Creole interpreter.  It is entirely plausible that (as was explained at trial) when the Debtor's original attorney prepared the Sanctions Motion in 2013, he misunderstood her: that when she told him she had been "beaten," he thought she said "bitten."  (See Trial Tr. 88:21-89:11, ECF No. 130.)  For the same reason, the fact that the police report notes that Ms. Jean-Francois was hit with a wooden stick, while she stated in her direct affidavit testimony that she was beaten with a chair, does not undermine her credibility.  Because Church Avenue evicted the Debtor in violation of the automatic stay, and during that eviction the Debtor's wife was physically assaulted, the Court finds that Church Avenue's stay violation was egregious and warrants punitive damages.

In determining whether to award punitive damages under § 362(k), several bankruptcy courts have identified five factors to guide their decision: the nature of the creditor's conduct, the creditor's ability to pay, the motives of the creditor, any provocation by the debtor, and the creditor's level of sophistication.  See Salov, 510 B.R. at 734 (citing In re B. Cohen & Sons Caterers, Inc., 108 B.R. 482, 487 (E.D. Pa. 1989)); In re Gagliardi, 290 B.R. 808, 820 (Bankr. D. Colo. 2003).  As to the first factor, Church Avenue's conduct was shocking and egregious; the

Debtor's wife was physically assaulted in the course of the stay violation. There can be no excuse or justification for such use of physical violence; and the egregious nature of the creditor's action is a factor which weighs heavily in favor of a significant punitive damages award. As to the second factor, ability to pay damages, although the record shows that Church Avenue is a real estate investor, which purchased the Debtor's note and mortgage after the loan was in foreclosure, for the purpose of acquiring the Building, the record is insufficient to assess Church Avenue's ability to pay damages, and this factor will be given no weight.

As to the third factor, Church Avenue's motive, to evict the Debtor from the Building despite his bankruptcy filing, was improper. As to the fourth factor, it is clear that there was no provocation by the Debtor with respect to the initial decision to evict. Church Avenue contends that Ms. Jean-Francois provoked the altercation in which she was assaulted. Mr. Davidovics testified that when Ms. Jean-Francois first arrived at the Building on the day of the eviction, she screamed at the movers, grabbed some chairs, and sat down; Ms. Jean-Francois, on the other hand, testified that as she was "trying to speak to [Mr.] Davidovics, he pushed [her] and three of the movers struck [her] with chairs." (Davidovics Aff. 2, ECF No.128; Jean-Francois Aff. 3, ECF No. 126.) Any contention by Church Avenue that Ms. Jean-Francois's conduct constituted a provocation that would justify or excuse its agent's conduct would, if anything, exacerbate the egregious nature of the stay violation. No amount of screaming and consternation by Ms. Jean-Francois, or refusal to budge from the chairs that the movers were trying to put on the truck, would be sufficient to justify a physical attack, and as such should not result a diminution of the award of punitive damages here. Finally, as to the fifth factor, the creditor's level of sophistication, Church Avenue is a real estate investment entity, represented by counsel, and

15

should understand the consequences of violating the automatic stay. For all these reasons, the Debtor is entitled to punitive damages.

As to the amount of the punitive damage award, the Court must award punitive damages that are "'reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition.'" Vasbinder v. Scott, 976 F.2d 118, 121 (2d Cir. 1992) (quoting Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21 (1991)). In other words, punitive damages should be awarded in the amount that is needed to deter future stay violations of this kind. In assessing the damages appropriate to deter future conduct by Church Avenue, it should be noted that Church Avenue learned of the bankruptcy filing on September 3, 2013 at the latest, yet went ahead with the eviction of the Debtor from the Building on September 16 without seeking relief from the automatic stay. Moreover, Church Avenue never sought stay relief to authorize it to exclude the Debtor from the Building after September 16, 2013, and offered Mr. Davidovics's patently incredible testimony that the locks were never changed in an effort to avoid responsibility for this ongoing stay violation. The fact that Church Avenue pursued the eviction more than a week after it learned of the Debtor's bankruptcy suggests that Church Avenue either made its own — incorrect — legal conclusion with respect to whether the eviction would be a stay violation, or decided that moving ahead to empty the Building quickly and evict the occupants was worth more to it than the risk associated with defending a future § 362(k) motion.

"'The primary purpose of punitive damages awarded for a willful violation of the automatic stay is to cause a change in the creditor's behavior . . . .'" In re Panek, 402 B.R. 71, 77 (Bankr. D. Mass. 2009) (quoting In re Shade, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001)). The Second Circuit has stated that the punitive damages standard imposed by § 362(k) "encourages

would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay . . . ." Crysen/Montenay Energy Co., 902 F.2d at 1105. In other words, "Parties may not make their own private determination of the scope of the automatic stay without consequence." In re Diviney, 211 B.R. 951, 969 (Bankr. N.D. Okla. 1997). Here, an award of punitive damages is appropriate to deter similar decision making by Church Avenue or its principals in the future. Accordingly, the Debtor is awarded punitive damages in the amount of $50,000.

## CONCLUSION

For the foregoing reasons, Church Avenue is directed to pay punitive damages to the Debtor in the amount of $50,000. The Court will issue a separate order.



**Dated: Brooklyn, New York**
**July 1, 2015**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**

17